**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW ULLRICH, individually and on behalf of all others similarly situated, | Case No._____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR A JURY TRIAL** |
| TARGET CORPORATION, | |
| Defendant. | |

Plaintiff Matthew Ullrich ("Plaintiff") by and through his undersigned counsel, brings this class action complaint against Defendant Target Corporation ("Target" or the "Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiff's counsel.

## IDENTIFICATION OF PARTIES – LOCAL RULE 10.1

1.      The names and addresses of the named parties to this action are: (1) Plaintiff: Matthew Ullrich, North Brunswick, New Jersey, 08902; and (2) Defendant: Target Corporation, 1000 Nicollet Mall, Minneapolis, Minnesota, 55403.

## NATURE OF THE ACTION

2.      This class action seeks damages and injunctive relief to address Target's practice of displaying false price advertisements on shelf signs ("Shelf Prices") throughout its stores in New Jersey and charging consumers more for items  at checkout than the advertised Shelf Prices ("Overcharged Goods") in violation of the New Jersey Consumer Fraud Act ("NJCFA") §§ 56:8-2.5; 56:8-2.2; 56:8-2; 56:8-19, the New Jersey Truth in Consumer Contract Notice and Warranty Act ("TCCWNA") § 56:12-14, *et seq*., and New Jersey common law.

3.      Target uses Shelf Prices to advertise prices for merchandise to enable consumers to calculate pricing differences among brands, identify bargains, and to induce consumers to purchase the advertised merchandise. Consumers reasonably rely on Shelf Prices to make informed purchasing decisions, and reasonably expect to pay the advertised Shelf Prices at checkout.

4.      Target's Shelf Prices frequently do not reflect the item's selling price at checkout.

5.      Target deceptively, fraudulently, and knowingly, charges consumers more than its advertised Shelf Prices in violation of NJCFA § 56:8-2.

6.      Target's practices constitute a bait and switch scheme in which Target baits the consumer with low Shelf Prices and then switches to a higher price charged at checkout, in violation of NJCFA § 56:8-2.2.

7.      Target's behavior violates NJCFA §§ 56:8-2.5 by its failure to properly mark Shelf Prices with the total selling price.

8.      Plaintiff and the Class members who purchased Overcharged Goods have ascertainable losses quantified by the amount of the overcharges caused by Target's conduct.

9.      The false and misleading Shelf Prices affect various merchandise throughout Target's New Jersey stores, with Overcharged Goods costing consumers more than the advertised Shelf Prices.

10.      Plaintiff and the Class members who purchased Overcharged Goods shop at Target regularly and are likely to be harmed in the future by Target's continued display of false Shelf Prices.

11.      Plaintiff brings this action on behalf of a class of persons who purchased Overcharged Goods from Target stores located in the New Jersey within the applicable statute of limitations (the Class is defined below), and seeks the remedies permitted under NJCFA § 56:8-

19 and the TCCWNA § 56:12-17, or alternatively for Unjust Enrichment under New Jersey Common Law.

## JURISDICTION AND VENUE

12.    The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and members of the Class are citizens of New Jersey, a different state than Defendant.

13.    Minimal diversity exists because Plaintiff and Target are citizens of different states. Plaintiff is a citizen of New Jersey. Target is a Minnesota corporation with its principal place of business in Minnesota.

14.    This Court has personal jurisdiction over Defendant because Defendant conducts significant amounts of business in New Jersey through its fifty-one retail stores. Defendant has sufficient minimum contacts with New Jersey and/or sufficiently availed itself of the markets in this state through its advertising, promotion, sales, distribution, and marketing within this state, including this District, to render the exercise of jurisdiction by this Court permissible.

15.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

16.    Venue is proper under 28 U.S.C. § 1391(c) because Defendant is a corporation that does business in and is subject to personal jurisdiction in this District.

## PARTIES

17.    Plaintiff Matthew Ullrich is a citizen of New Jersey and resides in this District.

18.    In March 2023, Plaintiff purchased Overcharged Goods at Target in this District.

19.     Defendant Target is a Minnesota corporation with fifty-one retail stores in New Jersey that advertise and sell Overcharged Goods.

## SUBSTANTIVE ALLEGATIONS

A.    **Target's Business Model**

20.     Target claims in its 2023 Annual Report filed with the SEC that it offers "everyday essentials and fashionable, differentiated merchandise at discounted prices."

21.     The majority of Target's sales come from consumers purchasing products at Target's brick and mortar store locations. For fiscal year 2023, Target's in-store sales represented $86.4 billion, or approximately 82% of Target's total sales.[1]

22.     Target sells retail merchandise to New Jersey consumers at fifty-one brick and mortar locations in New Jersey.[2]

23.     New Jersey Target locations accounted for sales of over $300 per New Jersey resident in fiscal year 2023, the equivalent of over $2.7 billion of Target's sales.[3]

---

[1] Target 2023 Form 10-K, (March 13, 2024), at 3, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000027419/000002741924000032/tgt-20240203.htm ("2023 Annual Report").

[2] *See* 2023 Annual Report at 18.

[3] *See* Target Sales per Capita available at https://corporate.target.com/investors/annual/2023-annual-report/financials/sales-per-capita



24.    Target's reported New Jersey sales reflect the prices consumers paid for retail items purchased at Target's New Jersey stores.

25.    Target sets the prices for the retail items it offers for sale to the public.

26.    Target creates and displays Shelf Price advertisements on the shelves in Target stores.

27.    Target uses technology, such as handheld scanning devices, to set and track the Shelf Prices advertised in Target stores.

28.     Target has data from the handheld scanners showing the Shelf Prices for all merchandise, including the dates and times the Shelf Prices were advertised to consumers.

29.    Target also sets the checkout prices charged to consumers by Target's stationary scanners at the cash register.

5

30.     Target tracks and has data establishing the checkout prices that customers have been charged, including by item, location, date, and time.

31.     Target also has data that enables the identification of class members, including customer data maintained as part of Target's Target Circle (f/k/a Target Cartwheel until 2019) accounts.

32.     When a consumer is a member of Target Circle, the member has a Target Circle account, and the member's transaction history and the corresponding information associated with the member's transactions are stored by Target. This transaction history includes the date and location of the member's in-store purchases, the items purchased, the prices paid for the items, and the method of payment.

33.     Target Circle accounts require members to provide Target with their name, email address, and phone number.

34.     Target and Target Circle account members agree that Target has access to the information Target collects through its Target Circle account.

**B.    Target Uses Unlawful Sales Practices, Resulting in Actual Damage to Plaintiff and Class Members**

35.     Target uses Shelf Prices to advertise prices inside its stores, which are designed to, and do, induce consumers in New Jersey, including Plaintiff and Class members, into selecting the advertised goods from among similar products and into believing that they will pay the prices advertised.

36.     Target intends that consumers will rely on the advertised Shelf Prices.

37.     After relying on Target's Shelf Prices to select the advertised items, Plaintiff and Class members are charged higher prices for Overcharged Goods at checkout.

38.    On March 4, 2023, Plaintiff purchased Overcharged Goods at Target's store located at 101 Grand Avenue, North Brunswick, New Jersey. As shown below, Plaintiff was charged higher prices for certain merchandise at checkout than what Target advertised on its Shelf Prices. On that day:

a.    **Swiffer Wet Jet Pads (SKU: 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):** Target's Shelf Prices advertised that Swiffer Wet Jet Pads cost $13.99. Plaintiff suffered losses of $.50 when he was charged and paid $14.49 at checkout (a markup of over 3.5%) (highlighting added for easy reference):





**b.**   **Up&Up All Purpose Cleaning Spray (SKU: 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):** Target's Shelf

Prices advertised that Up&Up All Purpose Cleaning Spray cost $2.29. Plaintiff

suffered losses of $.10 when he was charged and paid $2.39 at checkout (a

markup of over 4.2%) (highlighting added for easy reference):



8



c.   **Up&Up Disinfectant Wipes (SKU: 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):** Target's Shelf Prices advertised that Up&Up Disinfectant Wipes cost $10.49. Plaintiff suffered losses of $.50 when he was charged and paid $10.99 at checkout (a markup of over 4.8%) (highlighting added for easy reference):





39. Plaintiff considers Shelf Prices when making his shopping decisions.

40. Prior to purchasing the Overcharged Goods as set forth in Paragraph 38, Plaintiff read and relied upon Defendant's false and misleading Shelf Prices that were prepared and approved by Target.

41. Plaintiff encountered overcharges at multiple Target stores in New Jersey.

42. On March 10, 2023, the Shelf Prices at Target located at 400 Ryders Lane, Milltown, New Jersey advertised that Up&Up Paper Towels (SKU: 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) cost $14.99. Target charged Plaintiff $15.99 for the item at checkout (a markup of over 6.7%).

43.     On March 28, 2023, the Shelf Prices at Target located at 101 Grand Avenue, North Brunswick, New Jersey advertised that Favorite Day Ice Cream (SKU: 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) cost $3.49. Target charged Plaintiff $3.79 for the item at checkout (a markup of over 8.6%).

44.     Plaintiff's counsel's investigation identified numerous and frequent overcharges at additional Target stores examined across New Jersey during the relevant period.

45.     For example, on July 24, 2024, the Shelf Pricing at a Target located at 900 Bergen Town Ctr., Paramus, New Jersey advertised that: (1) KRAFT Philadelphia Whipped Cream Cheese Spread cost $4.19, when the price at checkout was $4.69; (2) Entenmann's Little Bites Fudge Brownies cost $3.69, when the price at checkout was $3.99; (3) Starkist Wild Caught Albacore White Tuna in Water cost $1.39, when the price at checkout was $2.19; (4) Campbells Cream of Mushroom Soup cost $1.39, when the price at checkout was $1.79; (5) Lindt Lindor Dark Chocolate Truffles cost $5.69, when the price at checkout was $5.99; (6) Happy Family/Baby Organic Greek Yogis cost $3.99, when the price at checkout was $4.49; and (7) Good & Gather Low Fat Cottage Cheese cost $2.99, when the price at checkout was $3.39.

46.     Similarly, on July 24, 2024, the Shelf Pricing at a Target located at 600 Main Street, Hackensack, New Jersey advertised that: (1) Tic Tac Sprite cost $1.59, when the price at checkout was $1.99; (2) Vaseline Original Healing Jelly cost $4.69, when the price at checkout was $4.99; (3) TUMS Antacid Smoothies cost $9.99, when the price at checkout was $10.89; (4) Pepperidge Farm Cookies cost $3.79, when the cost at checkout was $3.99; and (5) KRAFT Philadelphia Whipped Cream Cheese Spread cost $4.19, when the price at checkout was $4.69.

47.     Target knows that it overcharges consumers through its unlawful pricing practices. This is because Target has been fined for this practice of overcharging customers in multiple states. However, Target continues to allow its New Jersey stores to charge more for Overcharged Goods

than what is advertised on the Shelf Prices and elects not to implement systemic controls to prevent these unlawful practices. Target profits by millions of dollars each year from selling Overcharged Goods in its New Jersey stores.

## CLASS DEFINITION AND ALLEGATIONS

48.     Pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the proposed Class.

> All Target customers who paid higher prices for merchandise than the advertised shelf-prices at Target stores in New Jersey between September 5, 2018 until the date notice is disseminated, who have Target receipts, records from a Target Circle Rewards or other Target Account, or other proof of purchase reflecting the date of purchase(s), location of purchase(s), item(s) purchased, and price(s) paid, and who suffered damages.

49.     Excluded from the Class are: (i) the Defendant, and any entity in which the Defendant or its subsidiaries of affiliates have a controlling interest, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iv) all persons who make a timely election to be excluded from the Class; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

50.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**: The members of the proposed Class are so numerous that the individual joinder of all absent Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and is in the exclusive control of Defendant, it is ascertainable by appropriate discovery. Plaintiff is informed and reasonably believes that Class members include hundreds of thousands of people or more, who reside in different parts of New Jersey, such that joinder of all Class members is impracticable.

51.    **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including: (i) whether Target's pricing practices are unlawful under the NJCFA; (ii) whether Target's pricing practices with respect to Shelf Prices and Overcharge Goods are an unconscionable commercial practice, deceptive act, fraudulent act, false pretense, false promise, or misrepresentation; (iii) whether Target's conduct with respect to Shelf Prices and Overcharged Goods constitutes an unlawful affirmative misrepresentation; (iv) whether Target violates New Jersey state law; (v) whether Target should be enjoined from continuing to charge consumers higher prices for merchandise than is advertised on its Shelf Prices, and/or required to implement systemic controls to ensure the same; (vi) whether Plaintiff and the Class members sustained ascertainable damages; (vii) whether Target's pricing practices violate the TCCWNA; and (viii) whether Target has unjustly enriched itself by unlawfully overcharging customers for Overcharged Goods.

52.    **Typicality – Federal Rule of Civil Procedure 23(a)(3):** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were injured through the substantially uniform misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of the other Class members arise from the same operative facts and are based on the same legal theories.

53.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4):** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and

experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

54. **Superiority – Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

55. **Ascertainability** – The members of the Class may be ascertained by information or records in the possession of Target, third parties, and/or the Class members.

56. **Federal Rule of Civil Procedure 23(b)(2) Certification** – Defendant has acted or refused to act on grounds generally applicable to each of the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## **FIRST CAUSE OF ACTION**

**UNLAWFUL PRICING**
**(The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-2.5; 56:8-19)**

57. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-56 as if fully set forth herein.

58.    Plaintiff brings this action individually and on behalf of the Class.

59.    Defendant's unlawful practice occurred in a course of conduct involving trade and commerce in New Jersey.

60.    The Overcharged Goods are "merchandise" sold at "retail" within the meaning of N.J. Stat. Ann. § 56:8-1.

61.    N.J. Stat. Ann. § 56:8-2.5 states that "[i]t shall be an unlawful practice for any person to sell, attempt to sell or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by a stamp, tag, label or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale."

62.    Defendant failed to mark the total selling price of the Overcharged Goods at the point where they were offered for sale by marking the Shelf Prices with lower prices than what Defendant charged at checkout.

63.    Defendant sold the Overcharged Goods at total selling prices that were higher than the marked Shelf Prices.

64.    Defendant's practice of advertising lower Shelf Prices but charging higher prices for Overcharged Goods at checkout is an unlawful practice under N.J. Stat. Ann. § 56:8-2.5.

65.    The Shelf Prices for the Overcharged Goods were material, affirmative representations.

66.    Plaintiff was misled by Defendant's unlawful pricing practices.

67.    Plaintiff's and the Class's ascertainable losses as a result of this unlawful practice is the difference between the advertised Shelf Prices and the higher prices they paid at checkout for the Overcharged Goods.

68.     Plaintiff's and the Class's damages as a result of this unlawful practice is the difference between the advertised Shelf Prices and the higher prices they paid at checkout for the Overcharged Goods.

69.     Plaintiff's and the Class's ascertainable losses were directly and proximately caused by Defendant's unlawful pricing practices.

70.     Plaintiff's and the Class's damages were directly and proximately caused by Defendant's unlawful pricing practices.

71.     Defendant is liable to Plaintiff and the other members of the Class for trebled damages, plus reasonable attorneys' fees, filing fees, and reasonable costs of suit, and other relief as deemed appropriate or permitted pursuant to the relevant law. N.J. Stat. Ann. 56:8-19.

72.     Defendant's unlawful pricing practices are pervasive and continuous at Target stores in New Jersey.

73.     Because Defendant benefits financially from its unlawful pricing practices, Defendant elects not to implement effective institutional systemic controls to prevent Overcharged Goods.

74.     Plaintiff intends to continue shopping at Defendant's stores in the future and, unless Defendant is enjoined, will likely be harmed by Defendant's unlawful pricing practices.

75.     Plaintiff and Class members require injunctive relief because they will incur future overcharges caused by Defendant's unlawful pricing practices because it is unreasonable for Plaintiff and Class members to expend the time and effort necessary to memorize or record the Shelf Pricing for every item they purchase, and compare those prices to the prices reflected on the receipts given to them after their purchases.

76.    Without injunctive relief, Plaintiff and Class members will continue to be overcharged without their knowledge because Defendant's unlawful pricing practices apply to assorted merchandise at various times and reasonable consumers rely on Shelf Pricing.

77.    As a result of the Defendant's violations of the New Jersey Consumer Fraud Act, Plaintiff and Class members are entitled to equitable relief, including injunctive relief as deemed appropriate or permitted pursuant to the relevant law.

**SECOND CAUSE OF ACTION**

**UNLAWFUL ADVERTISING**
**(New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-2.2; 56:8-19)**

78.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-77 as if fully set forth herein.

79.    Plaintiff brings this action individually and on behalf of the Class.

80.    The Shelf Prices of the Overcharged Goods were material to Plaintiff's transactions.

81.    Defendant's displaying of Shelf Prices are "advertisements" within the meaning of N.J. Stat. Ann. § 56:8-1(a).

82.    The Shelf Prices are intended to induce directly or indirectly the purchase of the advertised merchandise (*i.e.*, the Overcharged Goods).

83.    N.J. Stat. Ann. § 56:8-2.2 states that "[t]he advertisement of merchandise as part of a plan or scheme … not to sell the same at the advertised price" constitutes an unlawful practice.

84.    Defendant does not sell the Overcharged Goods at the prices advertised for sale.

85.    Defendant used Shelf Price advertisements to induce purchases, and then charged higher prices than advertised for Overcharged Goods as part of a plan or scheme to profit therefrom.

86.     Defendant's conduct constitutes a plan or scheme not to sell Overcharged Goods at advertised prices, which is an unlawful practice under N.J. Stat. Ann. § 56:8-2.2.

87.     The Shelf Prices for the Overcharged Goods were material, affirmative representations.

88.     Plaintiff was misled by Defendant's advertised prices.

89.     Plaintiff's and the Class's ascertainable losses as a result of this unlawful practice is the difference between the advertised Shelf Prices and the higher prices they paid at checkout for the Overcharged Goods.

90.     Plaintiff's and the Class's damages as a result of this unlawful practice is the difference between the advertised Shelf Prices and the higher prices they paid at checkout for the Overcharged Goods.

91.     Plaintiff's and the Class's ascertainable losses were directly and proximately caused by Defendant's unlawful pricing practices.

92.     Plaintiff's and the Class's damages were directly and proximately caused by Defendant's unlawful practices.

93.     Defendant is liable to Plaintiff and the other members of the Class for trebled damages, plus reasonable attorneys' fees, filing fees, and reasonable costs of suit, and other relief as deemed appropriate or permitted pursuant to the relevant law. N.J. Stat. Ann. 56:8-19.

94.     Defendant's unlawful practices are pervasive and continuous at Target stores in New Jersey.

95.     Because Defendant benefits financially from its unlawful pricing practices, Defendant elects not to implement effective institutional systemic controls to prevent Overcharged Goods.

96.    Plaintiff intends to continue shopping at Defendant's stores in the future and, unless enjoined, will likely be harmed by Defendant's unlawful pricing practices.

97.    Plaintiff and Class members require injunctive relief because they will incur future overcharges caused by Defendant's unlawful pricing practices because it is unreasonable for Plaintiff and Class members to expend the time and effort necessary to memorize or record the Shelf Pricing for every item they purchase, and compare those prices to the prices reflected on the receipts given to them after their purchases.

98.    Without injunctive relief, Plaintiff and Class members will continue to be overcharged without their knowledge because Defendant's unlawful pricing practices apply to assorted merchandise at various times and reasonable consumers rely on Shelf Pricing.

99.    As a result of the Defendant's violations of the New Jersey Consumer Fraud Act, Plaintiff and Class members are entitled to equitable relief, including injunctive relief as deemed appropriate or permitted pursuant to the relevant law.

### THIRD CAUSE OF ACTION

**FRAUD, ETC., IN CONNECTION WITH SALE OR ADVERTISEMENT OF MERCHANDISE AS UNLAWFUL PRACTICE**
**(New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-2; 56:8-19)**

100.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-99 as if fully set forth herein.

101.    Plaintiff brings this action individually and on behalf of the Class.

102.    The New Jersey Consumer Fraud Act prohibits "[t]he act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation ... in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid,

whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

103.    Defendant engaged in an unlawful practice under N.J. Stat. Ann. § 56:8-2 by advertising false Shelf Prices to induce customers to purchase the Overcharged Goods, while charging higher prices at checkout, which is unconscionable, abusive, deceptive, fraud, false pretense, false promise, and/or misrepresentation.

104.    The Shelf Prices for the Overcharged Goods were material, affirmative representations.

105.    Defendant's unlawful practice of advertising false Shelf Prices is unfair and unjust and materially departs from the standards of good faith, honesty and fair dealing.

106.    Defendant's unlawful practice of advertising false Shelf Prices was misleading to Plaintiff and is capable of and likely to mislead average consumers.

107.    Plaintiff's and the Class's ascertainable losses as a result of this unlawful practice is the difference between the advertised Shelf Prices and the higher prices they paid at checkout for the Overcharged Goods.

108.    Plaintiff's and the Class's damages as a result of this unlawful practice is the difference between the advertised Shelf Prices and the higher prices they paid at checkout for the Overcharged Goods.

109.    Plaintiff's and the Class's ascertainable losses were directly and proximately caused by Defendant's unlawful pricing practices.

110.    Plaintiff's and the Class's damages were directly and proximately caused by Defendant's unlawful practices.

111.    Defendant is liable to Plaintiff and the other members of the Class for trebled damages, plus reasonable attorneys' fees, filing fees, and reasonable costs of suit, and other relief as deemed appropriate or permitted pursuant to the relevant law. N.J. Stat. Ann. 56:8-19.

112.    Defendant's unlawful practice is pervasive and continuous at Target stores in New Jersey.

113.    Because Defendant benefits financially from its unlawful pricing practices, Defendant elects not to implement effective institutional systemic controls to prevent Overcharged Goods.

114.    Plaintiff intends to continue shopping at Defendant's stores in the future and, unless enjoined, will likely be harmed by Defendant's unlawful pricing practices.

115.    Plaintiff and Class members require injunctive relief because they will incur future overcharges caused by Defendant's unlawful pricing practices because it is unreasonable for Plaintiff and Class members to expend the time and effort necessary to memorize or record the Shelf Pricing for every item they purchase, and compare those prices to the prices reflected on the receipts given to them after their purchases.

116.    Without injunctive relief, Plaintiff and Class members will continue to be overcharged without their knowledge because Defendant's unlawful pricing practices apply to assorted merchandise at various times and reasonable consumers rely on Shelf Pricing.

117.    As a result of the Defendant's violations of the New Jersey Consumer Fraud Act, Plaintiff and Class members are entitled to equitable relief, including injunctive relief as deemed appropriate or permitted pursuant to the relevant law.

### FOURTH CAUSE OF ACTION

**TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT**
**(TCCWNA, N.J. Stat. Ann. §§ 56:12-14 *et. seq.*)**

118.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-117 as if fully set forth herein.

119.    Plaintiff brings this individually and on behalf of the Class.

120.    The TCCWNA prohibits sellers from displaying any sign which includes any provision that violates a clearly established right of a consumer or a clearly established responsibility of a seller under New Jersey or Federal law. N.J. Stat. Ann. § 56:12-15.

121.    At all relevant times, Plaintiff and those similarly situated were consumers within the meaning of the TCCWNA.

122.    At all relevant times, Defendant was a "seller" within the meaning of the TCCWNA.

123.    Defendant's Shelf Prices at its New Jersey stores constitute signs within the meaning of the TCCWNA.

124.    Defendant's unlawful pricing practices violate NJCFA §§ 56:8-2.5, 56:8-2.2, and 56:8-2, by (i) failing to plainly mark the total selling price of the Overcharged Goods at the point where they are offered for sale; (ii) charging higher prices at checkout for the Overcharged Goods than the advertised Shelf Prices; (iii) engaging in a plan or scheme not to sell the Overcharged Goods at the advertised Shelf Prices; and (iv) advertising false Shelf Prices to induce consumers to purchase the Overcharged Goods while charging higher prices at checkout, which is unconscionable, abusive, deceptive, fraud, false pretense, false promise, and/or misrepresentation.

125.    Plaintiff and the Class have a clearly established right in New Jersey to (i) have the Shelf Prices display the total selling price of merchandise at the point where they are offered for sale; and (ii) not be charged a price at checkout that is higher than the advertised Shelf Prices.

126.    Defendant's unlawful and unconscionable pricing practices violate the TCCWNA.

127.    Plaintiff and the Class suffered ascertainable losses as a result of Defendant's unlawful and unconscionable pricing practices as set forth above.

128.    As a result of the aforementioned violations of the TCCWNA, Plaintiff and the Class are entitled to statutory damages of not less than $100.00, plus reasonable attorneys' fees, and costs pursuant to the TCCWNA, N.J. Stat. Ann. § 56:12-17, for each unlawful advertisement displayed.

**FIFTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

129.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-128 as if fully set forth herein.

130.    Plaintiff brings, as an alternative theory of recovery, a claim for refunds on behalf of himself and the Class under a theory of unjust enrichment and/or disgorgement.

131.    Plaintiff brings this action individually and on behalf of the Class.

132.    By the acts alleged herein, Defendant received a benefit from Plaintiff and the Class in the form of monies paid by Plaintiff and the Class to Defendant that were higher than the prices Defendant advertised on its Shelf Prices.

133.    It is specifically alleged that the Defendant received and possesses the unlawful overcharges collected from Plaintiff and the Class and thus, the Defendant is a holder of illegal funds who is a necessary defendant for any claim of restitution, refund, or disgorgement.

134.    Defendant knew that Plaintiff and Class members conferred a benefit on Defendant and accepted or retained that benefit. Through its unlawful pricing and advertising practices, Defendant unjustly received and retained benefits at the expense of Plaintiff and Class members,

specifically the difference between the Shelf Prices and the higher prices paid at checkout for the Overcharged Goods.

135.    By and through Defendant's unlawful pricing practices, Defendant has received, had use of, and accrued interest on, these funds wrongfully obtained from Plaintiff and Class members.

136.    The retention of the benefits by Defendant would be unjust. Plaintiff and Class members have suffered pecuniary harm as a direct and proximate result of Defendant's conduct.

137.    Plaintiff and Class members have no adequate remedy at law.

138.    Plaintiff and Class members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Defendant, and for such other relief that this Court deems proper, as a result of its unfair, misleading, and inequitable conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.    Awarding treble damages in accordance with N.J. Stat. Ann. § 56:8-19;

C.    Awarding statutory damages in accordance with N.J. Stat. Ann. § 56:12-17;

D.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful, unfair and deceptive business practices as set forth

herein, and requiring it to implement systemic controls to prevent the same from continuing to occur;

E.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair and deceptive business practices;

F.      Awarding actual damages, compensatory damages, and punitive damages in an amount to be determined at trial;

G.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

H.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

I.      Ordering such other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## CERTIFICATE OF NOTICE

Pursuant to N.J. Stat. Ann. § 56:8-20, this Complaint will be sent by electronic mail to the dedicated address or account established by the Attorney General within 24 hours after its filing.

Dated: September 5, 2024

Respectfully submitted,

**LAW OFFICES OF JAN MEYER & ASSOCIATES, P.C.**

*/s/ Jan Meyer*
JAN MEYER
JORDAN GOTTHEIM

25

1029 Teaneck Road, Second Floor
Teaneck, New Jersey 07666
Telephone: (201) 862-9500

**BERNSTEIN LIEBHARD LLP**
STANLEY D. BERNSTEIN*
SANDY A. LIEBHARD*
MICHAEL S. BIGIN*
STEPHANIE M. BEIGE*
JEFFREY MCEACHERN*
HAIRONG BASIL*
10 East 40th Street
New York, New York 10016
Telephone: (212)779-1414
Facsimile: (212)779-3218

**GINGOLD LEGAL**
Scott H. Gingold*
1326 Isabella Street
Evanston, IL 60201
Telephone: (773) 793-9093

*Attorneys for Plaintiff*

*Application for *Pro Hac Vice* Forthcoming