## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MATTHEW ULLRICH and MOSHE EHRENFELD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Civil Action No. 24-8979 (MAS) (TJB)<br><br>**MEMORANDUM ORDER** |

This matter comes before the Court upon Defendant Target Corporation's ("Target" or "Defendant") Motion to: (1) Compel Individual Arbitration of Plaintiff Matthew Ullrich's ("Ullrich") claims; (2) Stay the Proceedings; and (3) in the alternative, to Transfer Venue of all claims asserted in the Amended Complaint by Ullrich and Plaintiff Moshe Ehrenfeld ("Ehrenfeld") (collectively, "Plaintiffs"). (ECF No. 32.)

In this putative class action, Plaintiffs allege that Target violated New Jersey consumer protection laws by charging consumers higher prices at checkout than those advertised on store shelves. (*See generally* Am. Compl., ECF No. 29.) Plaintiff Ullrich alleges that in March 2023, he purchased several items at Target stores in North Brunswick and Milltown, New Jersey, and was charged amounts ranging from $0.10 to $1.00 above the posted shelf prices for these items.[1] (*Id.* ¶¶ 19, 40-43.) Ehrenfeld similarly alleges that in October 2024, he purchased six different items

---

[1] Ullrich alleges that the items he purchased had the following discrepancies between their advertised shelf prices and checkout prices: (1) Swiffer Wet Jet Pads: $13.99 on the shelf, $14.49 at checkout; (2) Up&Up All Purpose Cleaning Spray: $2.29 on the shelf, $2.39 at checkout; (3) Up&Up Disinfectant Wipes: $10.49 on the shelf, $10.99 at checkout; (4) Up&Up Paper Towels: $14.99 on the shelf, $15.99 at checkout; and (5) Favorite Day Ice Cream: $3.49 on the shelf, $3.79 at checkout. (Am. Compl. ¶¶ 40-43.)

in Target stores and was charged between $0.10 to $2.20 above the items' posted shelf prices.[2] (*Id.* ¶ 44(a)-(f).) Plaintiffs further allege that their counsel investigated two Target stores in Paramus and Hackensack, New Jersey, in July 2024, and found similar discrepancies between the advertised prices, and the prices charged at checkout, for eleven different items. (*Id.* ¶¶ 47-49.)

Based on these facts, Plaintiffs assert claims under the New Jersey Consumer Fraud Act ("NJCFA"), the Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), and for unjust enrichment, against Target. (*Id.* ¶¶ 60-141.) Plaintiffs contend that Target's "unlawful and unconscionable pricing practices" caused "ascertainable losses" to Plaintiffs and to the proposed class, and that absent injunctive relief, Plaintiffs will likely suffer continued harm as they "intend to continue shopping at Defendant's stores in the future." (*Id.* ¶¶ 77, 117, 129-130.)

Target moves to compel arbitration of Plaintiff Ullrich's claims, asserting that Ullrich, in becoming a "Target Circle" member in 2019, agreed to Target's universal terms and conditions (the "Terms"), which include a binding arbitration agreement (the "Agreement").[3] (Def.'s Moving Br. 3-4, 16, ECF No. 32-1.) Target further asserts that the Agreement has a delegation clause, which provides that "any dispute over whether [] Ullrich's claims fall within the scope" of the Agreement is for an arbitrator to decide. (*Id.* at 17.) Target does not contend, however, that Plaintiff Ehrenfeld became a Target Circle member or otherwise entered into an arbitration agreement with Target. (*See generally id.*)

---

[2] Ehrenfeld alleges that the items he purchased had the following discrepancies between their advertised shelf prices and checkout prices: (1) TIC TAC candies: $2.69 on the shelf, $2.79 at checkout; (2) Vaseline: $1.79 on the shelf, $2.49 at checkout; (3) Eggland's Best Eggs: $3.39 on the shelf, $3.59 at checkout; (4) Cesar Chicken Dry Pet Food: $16.79 on the shelf, $18.99 at checkout; (5) Glad ForceFlex Tall Kitchen Bags: $11.49 on the shelf, $12.79 at checkout; and (6) Aquaphor: $6.29 on the shelf, $6.49 at checkout. (Am. Compl. ¶ 44.)

[3] Target Circle is Target's customer loyalty program. (*See* Def.'s Moving Br. 3-4 (describing Target Circle's membership and benefits).)

In response, Plaintiffs concede that Ullrich entered into a binding arbitration agreement with Target, and that the Agreement includes a delegation clause pursuant to which an arbitrator is to determine "whether [Ullrich's] claims are arbitrable." (Pls.' Opp'n Br. 1, n.2, ECF No. 33.) Accordingly, Plaintiffs do not oppose Target's motion to compel arbitration for the limited purpose of arbitrating Ullrich's claims. (*Id.*) Plaintiffs oppose, however, Target's request in the alternative to transfer venue of Plaintiffs' claims to the District of Minnesota. (*Id.* at 1.)

"It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that[:] (1) there is an agreement to arbitrate[;] and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009). "However, when an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists." *Coulter v. Experian Info. Sols., Inc.*, No. 20-1814, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)); *see also MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020) ("[U]nder section [four] of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision."). Therefore, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 586 U.S. at 69.

3

Additionally, "unless the party opposing arbitration challenges the delegation provision specifically, the district court must treat it as valid and must enforce it by sending any challenge to the validity of the underlying arbitration agreement to the arbitrator." *MZM Constr. Co.*, 974 F.3d at 399 (internal quotations omitted) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)) ("Think of a delegation provision as a mini-arbitration agreement within a broader arbitration agreement within a broader contract, something akin to Russian nesting dolls.") (cleaned up).

Here, Plaintiffs expressly agree "to arbitrate whether [Ullrich's] claims are arbitrable," and do not challenge the validity of the Agreement or its delegation provision. (Pls.' Opp'n Br. 1, n.1). Accordingly, the Court is "required to treat the [delegation] provision as valid," *Stanford v. Azzur Grp., LLC*, No. 23-3017, 2024 WL 921027, at *4 (E.D. Pa. Mar. 4, 2024), and honor the parties' contractual agreement by delegating Ullrich's claims to arbitration, including the threshold issue of arbitrability. *See MZM Constr. Co.*, 974 F.3d at 399.

If the Court finds that some, but not all claims are subject to arbitration, as it does here, the Court may stay the non-arbitrable claims pending the outcome of the arbitration. *See Coleman v. Sys. One Holdings, LLC*, 117 F.4th 97, 102 (3d Cir. 2024). The decision of whether to stay the remaining claims is within the sound discretion of the district court. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). "In determining whether a stay should be granted, the Court 'must weigh competing interests,' considering factors such as the risk of prejudice to the non-moving party, potential hardship or inequity to the proponent of the stay, and interests in judicial economy and efficiency." *Medversant Techs., LLC v. Leverage Health Sols., LLC*, 114 F. Supp. 3d 290, 299 (3d Cir. 2015) (*quoting Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 257 (1936)). Moreover, the Supreme Court has observed that, where a case involves both

arbitrable and non-arbitrable claims, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23.

Weighing the parties' competing interests, the Court finds that a stay of the action, including Ehrenfeld's claims, is appropriate for several reasons. First, the arbitrator will determine the threshold issue of whether Ullrich's claims are arbitrable. Proceeding with Ehrenfeld's claims before that finding is made would be inefficient and risk inconsistent outcomes between the arbitration and litigation. *See Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (explaining that the Court may stay a case "to abide the outcome of another [proceeding] which may substantially affect it or be dispositive of the issues"); *Progressive Pipeline Mgmt., LLC v. N. Abbonizio Contractors, Inc.*, No. 10-4551, 2011 WL 1343031, at *9 (E.D. Pa. Apr. 7, 2011) ("In the interests of judicial economy and so as to avoid the possibility of inconsistent results, we will exercise our discretion and stay the litigation against [one of the defendants] pending the outcome of the arbitration proceedings between [p]laintiff and [another defendant].").

Second, as courts have reasoned, a stay of all claims would avoid duplicative litigation and promote judicial economy, particularly in the class action context, where, as here, Plaintiffs rely on substantially similar factual allegations and "common questions of fact and law predominate." *In re Samsung Galaxy Smartphone Mktg. and Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (citing cases); *see Bischoff v. DirectTV, Inc.*, 180 F. Supp. 2d 1097, 1101-03 (C.D. Cal. 2002) (staying "all issues" as to all parties, including class representatives not subject to arbitration agreement, because questions of fact common to all would be involved in both the litigation and the arbitration); *Crawford v. W. Jersey Health Sys.*, 847 F. Supp. 1232, 1243 (D.N.J.

1994) ("Where significant overlap exists between parties and issues, courts generally stay the entire action pending arbitration."). Finally, a stay would not materially prejudice Ehrenfeld, because he may renew his claims against Target upon the completion of arbitration between Ullrich and Target. *See Medversant Techs., LLC*, 114 F. Supp. 3d at 299. The Court thus exercises its discretion to stay all proceedings pending the outcome of arbitration.[4]

Based on the foregoing,

**IT IS**, on this 29th day of September 2025, **ORDERED** that:

1.    Defendant's Motion to Compel Individual Arbitration and to Stay the Proceedings (ECF No. 32) is **GRANTED**.

2.    This matter is **STAYED** pending the outcome of arbitration between Ullrich and Target.

3.    Target's Motion to Transfer Venue (ECF No. 32) is **DENIED** without prejudice to renewal of the motion after completion of the arbitration.

4.    Within fourteen (14) days of any decision by the arbitrator, counsel shall e-file a joint status update to the Undersigned detailing the status of this litigation and whether the stay should be lifted.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[4] Because the Court compels arbitration as to Ullrich's claims and stays the case, the Court declines to address Target's alternative motion to transfer venue. *See Hinnant v. Am. Ingenuity, LLC*, 554 F. Supp. 2d 576, 588 n.10 (E.D. Pa. 2008) (explaining that the court "need not reach the pending motion to dismiss . . . or transfer venue" after having granted defendants' motion to compel arbitration and having stayed the action). If appropriate, Target may renew its motion to transfer venue upon the conclusion of arbitration.