**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW ULLRICH and MOSHE EHRENFELD, *individually and on behalf of all others similarly situated,*<br>Plaintiffs,<br>v.<br>TARGET CORPORATION,<br>Defendant. | Civil Action No. 24-8979 (MAS) (TJB)<br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Target Corporation's ("Defendant" or "Target") Motion to Dismiss, or in the alternative, to Strike Class Allegations (the "Motion") (ECF No. 44) of Plaintiffs Matthew Ullrich ("Ullrich") and Moshe Ehrenfeld's ("Ehrenfeld," and collectively with Ullrich, "Plaintiffs") Amended Complaint (ECF No. 29). Plaintiffs opposed (ECF No. 45), and Defendant replied (ECF No. 46). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion is granted in part and denied in part.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiffs bring the instant class action "seek[ing] damages and injunctive relief to address Target's practice of displaying false advertisements on shelf signs ('Shelf Prices') throughout its

[1] For the purpose of considering Defendant's Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

stores in New Jersey and charging consumers more for items at checkout than the advertised Shelf Prices ([the] 'Overcharged Goods')[.]" (Am. Compl. ¶ 2, ECF No. 29.)

Defendant, a Minnesota corporation, has fifty-one brick and mortar store locations in New Jersey and offers "everyday essentials and fashionable, differentiated merchandise at discounted prices." (*Id.* ¶¶ 21-23.) "Target sets the prices for [its] retail items[,]" and "creates and displays [these] Shelf Price advertisements on the shelves" within its stores. (*Id.* ¶¶ 27, 28.) "Target uses technology, such as handheld scanning devices, to set and track the Shelf Prices" advertised in its stores. (*Id.* ¶ 29.) Target has the data from these scanning devices, "including the dates and times" these prices "were advertised to consumers." (*Id.* ¶ 30.) It also sets the checkout price consumers are charged at its stationary scanners at the register. (*Id.* ¶ 31.) Similar to the Shelf Prices, Target tracks and maintains data concerning checkout prices, including information about what "customers have been charged, . . . by item, location, date, and time." (*Id.* ¶ 32.) Moreover, Target maintains a customer loyalty rewards program, Target Circle, which has a log of each member's transaction history. (*Id.* ¶ 34.) This transaction history "includes the date and location of the member's in-store purchases, the items purchased, the prices paid for the items, and the method [of] payment." (*Id.*)

Plaintiffs allege that Defendant uses its Shelf Prices to induce customers "into selecting the advertised goods from among similar products and into believing that they will pay the prices advertised." (*Id.* ¶ 37.) Target "intends that consumers will rely on the advertised Shelf Prices" and, in doing so, Plaintiffs and class members "select the advertised items . . . and are charged higher prices for Overcharged Goods at checkout." (*Id.* ¶¶ 38, 39.)

For example, on March 4, 2023, Ullrich visited the Target store located at 101 Grand Avenue, North Brunswick, New Jersey, and "was charged higher prices for certain merchandise

at checkout than what Target advertised on its Shelf Prices." (*Id.* ¶ 40.) These items included: (1) Swiffer Wet Jet Pads, advertised on the shelf for $13.99, but Ullrich was charged $14.49 at checkout; (2) Up&Up All Purpose Cleaning Spray, advertised on the shelf for $2.29, but Ullrich was charged $2.39 at checkout; and (3) Up&Up Disinfectant Wipes, advertised on the shelf for $10.49, but Ullrich was charged $10.99 at checkout. (*Id.*)

On March 10, 2023, Ullrich visited another Target store located at 400 Ryders Lane, Milltown, New Jersey. (*Id.* ¶ 42.) There, he purchased Up&Up Paper Towels which were advertised on the shelf for $14.99, but Ullrich was charged $15.99 at checkout. (*Id.*) This occurred again on March 28, 2023, while Ullrich was shopping at the North Brunswick Target store location. (*Id.* ¶ 43.) He purchased Favorite Day Ice Cream which was advertised on the shelf for $3.49 but Ullrich was charged $3.79 at checkout. (*Id.*)

On October 21, 2024, Ehrenfeld visited the Target store located at 4955 U.S. Highway 9, Howell, New Jersey. (*Id.* ¶ 44.) He purchased the following items which were advertised on the shelf for less than what was charged at checkout: (1) Tic Tacs, advertised on the shelf for $2.69, but Ehrenfeld was charged $2.79 at checkout; (2) Vaseline, advertised on the shelf for $1.79, but Ehrenfeld was charged $2.49 at checkout; (3) Eggland's Best Eggs, advertised on the shelf for $3.39, but Ehrenfeld was charged $3.59 at checkout; (4) Cesar Chicken Dry Pet Food, advertised on the shelf for $16.79, but Ehrenfeld was charged $18.99 at checkout; (5) Glad ForceFlex Tall Kitchen Trash Bags, advertised on the shelf for $11.49, but Ehrenfeld was charged $12.79 at checkout; and (6) Aquaphor, advertised on the shelf for $6.29, but Ehrenfeld was charged $6.49 at checkout. (*Id.*)

Upon further investigation, "Plaintiffs' counsel[] . . . identified numerous and frequent overcharges at additional Target stores examined across New Jersey during the relevant period."[2] (*Id.* ¶ 47.) Plaintiffs allege that they consider and rely upon Defendant's advertised Shelf Prices when making shopping decisions. (*Id.* ¶¶ 44-45.) Plaintiffs further allege that Defendant is aware that "it overcharges consumers through its unlawful pricing practices" because Defendant "has been fined for this practice . . . in multiple states." (*Id.* ¶ 50.) Yet, Defendant "elects not to implement systemic controls to prevent these unlawful practices" and instead "profits by millions of dollars each year from selling [the] Overcharged Goods[.]" (*Id.*)

Plaintiffs now bring this case on behalf of themselves and a proposed class consisting of:

> All Target customers who paid higher prices for merchandise than the advertised shelf-prices at Target stores in New Jersey between September 4, 2018[,] until the date notice is disseminated, who have Target receipts, records from a Target Circle Rewards or other Target Account, or other proof of purchase reflecting the date of purchase(s), location of purchase(s), item(s) purchased, and price(s) paid, and who suffered damages.

---

[2] For example, on July 24, 2024, at the Target store located at 900 Bergen Town Center, Paramus, New Jersey, Plaintiffs' counsel identified seven items that cost more at checkout than the advertised Shelf Price: (1) KRAFT Philadelphia Whipped Cream Cheese Spread, advertised on the shelf for $4.19 and cost $4.69 at checkout; (2) Entenmann's Little Bites Fudge Brownies, advertised on the shelf for $3.69 and cost $3.99 at checkout; (3) Starkist Wild Caught Albacore White Tuna in Water, advertised on the shelf for $1.39 and cost $2.19 at checkout; (4) Campbells Cream of Mushroom Soup, advertised on the shelf for $1.39 and cost $1.79 at checkout; (5) Lindt Lindor Dark Chocolate Truffles, advertised on the shelf for $5.69 and cost $5.99 at checkout; (6) Happy Family/Baby Organic Greek Yogis, advertised on the shelf for $3.99 and cost $4.49 at checkout; and (7) Good & Gather Low Fat Cottage Cheese, advertised on the shelf for $2.99 and cost $3.39 at checkout. (Am. Compl. ¶ 48.)

Similarly, at the Target store located at 600 Main Street, Hackensack New Jersey, Plaintiffs' counsel identified five items that cost more at checkout than the advertised shelf price: (1) Tic Tac Sprite, advertised on the shelf for $1.59 and cost $1.99 at checkout; (2) Vaseline Original Healing Jelly, advertised on the shelf for $4.69 and cost $4.99 at checkout; (3) TUMS Antacid Smoothies, advertised on the shelf for $9.99 and cost $10.89 at checkout; (4) Pepperidge Farm Cookies, advertised on the shelf for $3.79 and cost $3.99 at checkout; and (5) KRAFT Philadelphia Whipped Cream Cheese Spread, advertised on the shelf for $4.19 and cost $4.69 at checkout. (*Id.* ¶ 49.)

(*Id.* ¶ 51.)

### B. Procedural Background

Plaintiffs filed their original complaint on September 5, 2024, on behalf of themselves individually and those similarly situated. (Compl., ECF No. 1.) On January 8, 2025, Plaintiffs filed the operative Amended Complaint alleging five causes of action: (1) unlawful pricing under the New Jersey Consumer Fraud Act (the "NJCFA") ("Count One"); (2) unlawful advertising under the NJCFA ("Count Two"); (3) fraud in connection with the sale or advertisement of merchandise as an unlawful practice under the NJCFA ("Count Three"); (4) violation of the Truth in Consumer Contract, Warranty, and Notice Act (the "TCCWNA") ("Count Four"); and (5) unjust enrichment ("Count Five"). (Am. Compl. ¶¶ 60-141.) Plaintiffs seek class certification, injunctive relief preventing Defendant from continuing "unlawful, unfair, and deceptive business practices[,]" and damages, including actual, compensatory, and punitive damages, attorneys' costs and litigation fees, statutory and treble damages, and interest. (*Id.* at Req. for Relief ¶¶ A-H.)

On February 5, 2025, Defendant moved to compel arbitration and/or transfer venue to the United States District Court for the District of Minnesota. (Mot. to Compel Arbitration and/or Transfer Venue, ECF No. 32.) This Court granted Defendant's motion to compel arbitration, denied the request to transfer venue, and stayed the matter pending the outcome of arbitration. (Sep. 29, 2025, Mem. Order, ECF No. 37.)

On February 5, 2026, the arbitrator ruled that the "claims are outside the scope of the arbitration provision and the Target Circle Terms." (Joint Status Report ¶ 8, ECF No. 39-1.) Thereafter, Defendant filed the instant Motion. (Def.'s Mot. to Dismiss, ECF No. 44.) Plaintiffs opposed (Pls.' Opp'n Br., ECF No. 45), and Defendant replied (Def.'s Reply Br., ECF No. 46).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

**B. Motion to Strike Class Allegations**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 348 (2011) (quotation marks and citation omitted). "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)).

To satisfy Rule 23(a), (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply, adequacy). *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)-(4)).

Rule 23(b) permits class certification if: (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions predominate over the individual questions and a class action is superior to other methods of bringing the suit. Fed. R. Civ. P. 23(b). Rule 23(b)(3) requires that common class questions predominate over questions affecting only individual members and that the class action mechanism be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

Although class certification typically follows discovery, courts may strike class allegations at the pleading stage where it is clear from the face of the complaint that the requirements of Rule 23 cannot be satisfied as a matter of law. *See Zarichny v. Complete Payment Recovery Servs., Inc.*,

80 F. Supp. 3d 610, 615 (E.D. Pa. 2015). Rule 12(f) permits courts to strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading, and Rule 23(c)(1) requires courts to determine "[a]t an early practicable time" whether a proposed class satisfies class certification requirements. Fed. R. Civ. P. 12(f), 23(c)(1).

Whether to grant a motion to strike is reserved to the discretion of the district court. *Krisa v. Equitable Life Assurance Soc'y*, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (citation omitted). A district court may strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action. *See Zarichny*, 80 F. Supp. 3d at 615; *Semenko v. Wend's Int'l, Inc.*, No. 12-836, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013).

## III. DISCUSSION

Defendant moves to dismiss Plaintiffs' five causes of action for failure to state a claim, or in the alternative, to strike Plaintiffs' class allegations. The Court considers each in turn.

### A. Motion to Dismiss for Failure to State a Claim

#### *1. Plaintiffs' NJCFA Claims (Counts One, Two, and Three)*

Plaintiffs allege that Defendant engages in unlawful pricing, unlawful advertising, and fraud in connection with the sale and advertisement of merchandise in violation of the NJCFA.[4] (Am. Compl. ¶¶ 60-120); N.J. Stat. Ann. §§ 56:8-2.5, 56:8-2.2, 56:8-2. Defendant moves to

[4] Section 56:8-2.5 of the NJCFA makes it unlawful for "any person to sell, attempt to sell or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by a stamp, tag, label[,] or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale." N.J. Stat. Ann. § 56:8-2.5. Under Section 56:8-2.2 of the NJCFA, "[t]he advertisement or merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice[.]" N.J. Stat. Ann. § 56:8-2.2. Section 56:8-2 of the NJCFA prohibits fraud in connection with the sale or advertisement of merchandise. N.J. Stat. Ann. § 56:8-2.

dismiss all three of Plaintiffs' NJCFA claims, arguing that Plaintiffs have failed to establish proximate cause, a necessary element of any NJCFA claim. (Def.'s Moving Br. 8, ECF No. 44-1.)

"The [NJ]CFA was enacted to provide[] relief to consumers from fraudulent practices in the market place." *Dugan v. TGI Fridays, Inc.*, 171 A.3d 620, 635 (N.J. 2017) (second alteration in original) (quotation marks and citation omitted). To adequately state a claim under the NJCFA, a plaintiff must allege: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendant['s] unlawful conduct and the plaintiff[s'] ascertainable loss." *In re Insulin Pricing Litig.*, No. 17-699, 2024 WL 416500, at *34 (D.N.J. Feb. 5, 2024) (quoting *Neale v. Volvo Cars of N. Am., LLC*, No. 10-4407, 2021 WL 3013009, at *9 (D.N.J. July 15, 2021)). "To bring a claim under the NJCFA a plaintiff must also comply with the heightened pleading standard in [Rule] 9(b)." *In re Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 381 (D.N.J. 2024) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This standard requires that the pleadings "state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff[s] to sustain an ascertainable loss." *Id.* (quoting *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013)).

The Court addresses each element of an NJCFA claim in turn.

**a. Unlawful Conduct**

"An 'unlawful practice' contravening the [NJ]CFA may arise from[:] (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation." *Dugan*, 171 A.3d at 636 (citations omitted). "Where . . . plaintiff[s'] theory is based on a knowing omission, the plaintiff[s] must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Cameron v. S. Jersey Pubs, Inc.*, 213 A.3d 967, 984 (N.J. Super. Ct. App. Div. 2019)

(quotation marks and citation omitted). Where plaintiffs allege a regulatory violation, they "need not demonstrate intent 'because the regulations impose strict liability for such violations.'" *Id.* at 985 (citation omitted).

Here, Plaintiffs adequately allege that Defendants violated NJCFA Sections 56:8-2.5, 56:8-2.2, and 56:8-2. (*See* Am. Compl. ¶¶ 67, 89, 106.) Specifically, Plaintiffs allege that Defendant engaged in unlawful conduct as it: (1) did not accurately display "the total selling price" as required under NJCFA Section 56:8-2.5 because the Overcharged Goods were marked with Shelf Prices that were lower than what was charged at checkout (*id.* ¶¶ 7, 65-69); (2) advertised its merchandise through lower Shelf Prices to induce customers to make purchases "as part of a plan or scheme . . . not to sell the [item] at the advertised price" in violation of NJCFA Section 56:8-2.2 (*id.* ¶¶ 6, 86-88); and (3) knowingly concealed the true price of its merchandise from consumers relying on the advertised Shelf Price in violation of NJCFA Section 56:8-2 (*id.* ¶¶ 5, 50, 106-09). Moreover, Defendant does not argue that Plaintiffs have failed to allege unlawful conduct. (*See* Def.'s Moving Br. 8-11.)

The Court therefore finds that Plaintiffs adequately allege the first element of a claim under the NJCFA.

**b. Ascertainable Loss**

"[A]n 'ascertainable loss' can be 'either [an] out-of-pocket loss or a demonstration of loss in value . . . that is quantifiable or measurable.'" *In re Insulin Pricing Litig.*, 2024 WL 416500, at *35 (second and third alterations in original) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792-93 (N.J. 2005)). Here, Plaintiffs adequately allege that they suffered an out-of-pocket loss because they were charged more and paid for items at a higher price than what was advertised by the Shelf Price. (*See* Am. Compl. ¶¶ 40, 42-44); *Schwartz v. Avis Rent A Car*

*Sys., LLC*, No. 11-4052, 2012 WL 12909908, at *6 (D.N.J. Sep. 18, 2012) (finding plaintiff adequately alleged "an ascertainable loss in the amount of $0.75 per day" where plaintiff alleged that defendant's conduct "caused [p]laintiff and other reasonable renters to pay $0.75/day wrongly for frequent-flyer miles and reward points"). Furthermore, Defendant does not dispute that Plaintiffs have adequately alleged this element. (*See* Def.'s Moving Br. 8-11.)

The Court therefore finds that Plaintiffs adequately allege the second element of a claim under the NJCFA.

**c. Causal Relationship**

The third element requires that Plaintiffs plead sufficient facts to show a causal relationship between Defendant's unlawful conduct and Plaintiffs' ascertainable loss. *See In re Insulin Pricing Litig.*, 2024 WL 416500, at *34. A causal nexus is established where a plaintiff "show[s] that his or her ascertainable loss was caused by the seller's unlawful practice." *Heyert v. Taddese*, 70 A.3d 680, 700 (N.J. Super. Ct. App. Div. 2013) (citations omitted). A plaintiff need not show reliance, but instead must only "demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." *Lee v. Carter-Reed Co., LLC*, 4 A.3d 561, 577 (N.J. 2010) (citation omitted).

Defendant argues dismissal of the three NJCFA claims is appropriate because Plaintiffs have not satisfied the causation element. (Def.'s Moving Br. 8-11.) Based on the facts alleged, Defendant argues, Ullrich "recognized the discrepancies" between the Shelf Prices and checkout prices but continued to make his purchase and shop at Target stores, and Ehrenfeld knew of the discrepancies as evidenced by him "ma[king] purchases and contemporaneously document[ing] the alleged overcharges through photographs taken at the store upon making the purchase." (*Id.* at 10-11.) According to Defendant, Plaintiffs' decision to complete these purchases with this

knowledge caused the alleged harm, rather than Defendant's own behavior and, therefore, Plaintiffs have failed to establish causation. (*Id.* at 11.)

Although Defendant argues that Plaintiffs were aware of the price discrepancy before making their purchases (*see id.* at 8-11), Defendant fails to identify facts alleged in the Amended Complaint that support such a contention (*see generally id.*). Rather, as Plaintiffs maintain, the facts alleged in the Amended Complaint support that "[Plaintiffs] saw Target's posted Shelf Prices, considered those prices when selecting their items, and discovered the discrepancies only *after* completing their transactions." (Pls.' Opp'n Br. 12, ECF No. 45 (emphasis in original) (citing Am. Compl. ¶¶ 45-46).) Moreover, Plaintiffs argue that: (1) it would have been impossible for Ullrich to know based on previous shopping trips that different items at a different store on a different day would also be subject to any price discrepancy (*id.* at 13); and (2) Defendant's argument that photographs of receipts "demonstrate pre-purchase awareness of the [o]vercharges misreads the [Amended] Complaint" as "[t]he photographs are proof of the [S]helf [P]rices" and are "entirely consistent with Plaintiffs discovering the discrepancies after completing their purchases, returning to the shelves, and documenting the [o]vercharge with the receipt" (*id.* at 12 n.5).

Based on the facts as alleged in the Amended Complaint, and viewing those allegations in the light most favorable to Plaintiffs, the Court is not persuaded by Defendant's argument that Plaintiffs have alleged advanced knowledge that they would be charged more than the Shelf Price at checkout. Rather, the Court finds that Plaintiffs have satisfied the causation element by alleging that Defendant's unlawful conduct (violations of multiple provisions of the NJCFA) caused their ascertainable loss (money damages resulting from spending more than the Shelf Prices at checkout). *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 336 (D.N.J. 2014) (finding that plaintiffs alleged causation by pleading defendant's "Energy Star" logo led plaintiffs to believe

they would save energy costs over time and were therefore willing to pay a "price premium for the machines" but because the machines did not comply with "Energy Star standards[,]" plaintiffs paid a premium price for the machines and had increased energy costs).

Based on the above, the Court finds that Plaintiffs adequately allege the three elements required in pleading an NJCFA claim and satisfy the heightened pleading standard under Rule 9(b) by alleging with specificity: (1) Defendant's misrepresentations (Am. Compl. ¶¶ 37-39); (2) Plaintiffs' specific purchases (*id.* ¶¶ 40-45); (3) when and at what stores the misrepresentations took place (*id.*); and (4) how the misrepresentations led Plaintiffs to sustain a loss (*id.* ¶¶ 45, 46). *See In re Vision Data Breach Litig.*, 732 F. Supp. 3d at 382 ("[A] plaintiff asserting a[n] NJCFA claim must plead at minimum 'the what, where, and when of [the defendant's] alleged misrepresentations.'" (quoting *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-1057, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008)).

Defendant's Motion to Dismiss Counts One, Two and Three is, accordingly, denied.

### 2. *Violation of the TCCWNA (Count Four)*

Plaintiffs allege that Defendant violated the TCCWNA[5] by violating the NJCFA in: (1) "failing to plainly mark the total selling price of the Overcharged Goods"; (2) "charging higher prices at checkout for the Overcharged Goods than advertised by the Shelf Prices"; (3) "engaging in a plan or scheme" to sell its merchandise above the advertised Shelf Price; and (4) "advertising false Shelf Prices to induce consumers to purchase the Overcharged Goods while charging higher

[5] To adequately allege a claim under the TCCWNA, a plaintiff must allege that: "(1) the plaintiff is a consumer; (2) the defendant is a seller; (2) the seller offers a consumer contract or gives or displays any written notice, or sign; and (4) the contract, notice[,] or sign includes a provision that violate[s] any legal right of a consumer or responsibility of a seller." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) (second alteration in original) (quotation marks and citations omitted). Notably, "[t]he TCCWNA only bolsters rights established by other laws; it does not create any new consumer rights." *Id.* (citation omitted).

prices at checkout[.]" (Am. Compl. ¶ 127.) Defendant moves to dismiss Plaintiffs' TCCWNA claim because it relies on "alleged violations of the NJCFA" and where "Plaintiffs cannot state a claim for relief under the NJCFA, the TCCWNA claim must fail as well." (Def.'s Moving Br. 12.)

While courts in this District have rejected TCCWNA claims where a plaintiff failed to adequately allege an NJCFA claim, the Court here has found that Plaintiffs adequately state claims under the NJCFA. *See Tripicchio v. UPS Store, Inc.*, No. 21-14512, 2023 WL 3182915, at *8 (D.N.J. Apr. 30, 2023) ("[T]he Court finds that [p]laintiff's claim for violation of the NJCFA may serve as a predicate for his TCCWNA claim."); *Badalamenti v. Resideo Techs., Inc.*, 755 F. Supp. 3d 534, 549 (D.N.J. 2024) (finding TCCWNA that relied on NJCFA claim must be dismissed where court found that plaintiff did not adequately allege an NJCFA claim).

The Court, therefore, denies Defendant's Motion to Dismiss Count Four.

### *3. Unjust Enrichment (Count Five)*

Plaintiffs allege Defendant was unjustly enriched by "receiv[ing] a benefit . . . in the form of monies paid by Plaintiffs and [class members] to Defendant that were higher than the prices Defendant advertised on its Shelf Prices." (Am. Compl. ¶ 135.) Defendant moves to dismiss Count Five because Plaintiffs' claim: (1) sounds in tort; and (2) and "relies on the same conduct as the deficient NJCFA claims[.]" (Def.'s Moving Br. 12, 15.)

"To state a claim for unjust enrichment, [the] plaintiff[s] must allege[:] '(1) that the defendant has received a benefit from the plaintiff[s;] and (2) that the retention of the benefit by the defendant is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth. v. Township of West Milford*, 677 A.2d 747, 753 (N.J. 1996)). Notably, "New Jersey law does not recognize unjust enrichment as an independent tort

cause of action." *Schechter v. Hyundai Motor Am.*, No. 18-13634, 2019 WL 3416902, at *10 (July 29, 2019) (citations omitted).

Here, Plaintiffs' unjust enrichment claim rests on Defendant's practice of charging more at checkout than the advertised Shelf Price, causing Plaintiffs to incur monetary losses as a result of this practice. (*See* Am. Compl. ¶¶ 132-41.) Plaintiffs, however, fail to allege a benefit conferred on Defendant for which Plaintiffs expected remuneration. (*See generally* Am. Compl.) As such, the conduct underlying Plaintiffs' unjust enrichment claim sounds in tort.[6] *See In re Gerber Probiotic Sales Pracs. Litig.*, No. 12-835, 2014 WL 1310038, at *15 (D.N.J. Mar. 31, 2014) (dismissing unjust enrichment claim where plaintiffs' claim "sounds in tort" as plaintiffs alleged that defendant misrepresented a product's efficacy, but did not allege a benefit conferred such that plaintiffs would expect remuneration); *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132, at *3 (D.N.J. June 6, 2014) (finding plaintiffs failed to state an unjust enrichment claim because the claim concerned defendant's misrepresentations about its navigation system and sounded in tort, and plaintiffs did not otherwise allege a benefit conferred such that plaintiffs would expect remuneration).

The Court, therefore, grants Defendant's Motion to Dismiss Count Five. Count Five is, accordingly, dismissed.

---

[6] Plaintiffs attempt to argue in the alternative that their unjust enrichment claim could proceed under a quasi-contract theory. (*See* Pls.' Opp'n Br. 17.) This argument, however, also fails. "To establish unjust enrichment as a basis for quasi-contractual liability, 'a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust.'" *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. 2004) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). Stating an unjust enrichment claim under this theory also requires allegations that the "plaintiff[s] expected remuneration from the defendant[.]" *Id.* (quoting *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334-35 (N.J. Super. Ct. App. Div. 1966)). Plaintiffs' claim therefore fails under a quasi-contract theory for the same reason as the tort theory: Plaintiffs have not alleged a benefit conferred to Defendant such that Plaintiffs would expect remuneration. (*See generally* Am. Compl.)

**B. Motion to Strike Class Allegations**

Defendants alternatively move to strike Plaintiffs' class allegations because "Plaintiffs present a class definition that cannot, as a matter of law, be certified." (Def.'s Moving Br. 16-17.)

"The Court has the authority to strike class allegations at the pleading stage under [Rule] 12(f) if the complaint demonstrates that a class action cannot be maintained." *Mladenov*, 124 F. Supp. 3d at 368 (citing *Smith v. Merial Ltd.*, No. 10-439, 2012 WL 2020361, at *6 (D.N.J. June 5, 2012)). Striking class allegations is appropriate when "it becomes clear from the complaint that plaintiffs cannot meet the certification requirements of Rule 23." *Id.* (citations omitted). Motions to strike are disfavored at the motion to dismiss stage, however, and "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 706-07 (D.N.J. 2013) (citation omitted). In fact, "numerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature." *Id.* at 707. (citations omitted).

The Court finds that striking Plaintiffs' class allegations at this stage would be premature. Plaintiffs have provided a class definition that is potentially certifiable, with the assistance of additional information typically obtained in discovery. (*See* Am. Compl. ¶ 51); *Cannon v. Ashburn Corp.*, No. 16-1452, 2016 WL 7130913, at *12 (D.N.J. Dec. 7, 2016) (denying defendant's motion to strike class allegations at the pleadings stage where "discovery will . . . clarify the scope of the class"). As such, Defendant's Motion to Strike Class Allegations is denied. *See Neuss v. Rubi Rose, LLC*, No. 16-2339, 2017 WL 2367056, at *10 (D.N.J. May 31, 2017) (denying motion to strike class allegations at pleading stage as premature); *Q+Food LLC v. Mitsubishi Fuso Truck of Am.,*

*Inc.*, No. 14-6046, 2015 WL 4603678, at *7-8 (D.N.J. July 30, 2015) (same); *Durso v. Samsung Elecs. Am., Inc.*, No. 12-5352, 2013 WL 5947005, at *13 (D.N.J. Nov. 6, 2013) (same).

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion is granted in part, and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 9/2/2026